CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
8/29/17
JULIA C. DUDLEY, CLERK
BY: s/ K. DOTSON
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JAMES FRANKLIN SMITH, | ) |
| Plaintiff, | ) Case No. 5:16-cv-00060 |
| v. | ) |
| BE PRINTERS AMERICAS, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

In this case, plaintiff James Franklin Smith claims his former employer, Be Printers Americas ("Be Printers"), discriminated against him because of his Christian faith by demoting and later firing him. He also alleges that Be Printers created a hostile work environment, and retaliated against him for filing a charge with the Equal Employment Opportunity Commission ("EEOC"). Before the court is Be Printers' motion for summary judgment. ECF No. 20. This matter has been fully briefed, and the court heard oral argument on June 28, 2017. For the reasons that follow, the court **GRANTS in part** and **DENIES in part** Be Printers' motion.

I.

For approximately twenty-five years, Smith worked as printing manager at Berryville Graphics, Inc., a subsidiary of Be Printers located in Berryville, Virginia. ECF No. 1, ¶¶ 5, 7. In November 2013, Smith was transferred to Coral Graphics, a separate facility also operating under the control of Be Printers. Id. ¶ 8. In February 2014, while on loan to Coral Graphics, Smith was promoted to Manufacturing Manager and given a $20,000 pay increase.

ECF No. 5, at 8. However, in August 2014, Be Printers returned Smith to Berryville Graphics, and restored his pay to its original level.[1] Id. ¶¶ 8, 9. Be Printers alleges that he was returned to Berryville Graphics pursuant to a review conducted by senior management designed to remedy poor performance at the Berryville Graphics facility. ECF No. 5, at 8.

After Smith was returned to Berryville Graphics, Be Printers became aware that, while at Coral Graphics, Smith participated in the hiring of Adam Cullen. Id. Be Printers argues that Smith "materially deviated from [Be Printers'] employment policies, practices, and procedures," by failing to "disclose Mr. Cullen's criminal record to senior management, set[ting] Mr. Cullen's starting rate of compensation higher than could be justified based on his demonstrable lack of experience, and assign[ing] Mr. Cullen to be supervised by his relative." Id. at 9. These actions "constitute serious violations of the 'Nepotism' policy," "as well as the Conflict of Interest policy," and "were inconsistent with the ethical requirements of Be Printers." Id. Smith, however, argues that he had only slight involvement in the Cullen hiring, which, in his telling, was primarily overseen by co-supervisor Robert Davis. ECF No. 26, at 4.

In November 2014, Smith was informed by Mark Bone, his superior at Berryville Graphics, that his employment was terminated. ECF No. 1, ¶ 10. He was given two reasons: his role in the hiring of and setting of the pay rate for Cullen, and his job performance at Coral Graphics. Id. Bone indicated that the decision was made by Mitchell Weiss, Be

---

[1] Be Printers argues that, because this transfer occurred more than 300 days before the filing of Smith's EEOC charge, any claim based on the transfer is time-barred. See Nat. R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 106 (2002). Be Printers advances the same argument as to anti-Christian comments allegedly made by Mitchell Weiss. See infra p. 3. However, though allegedly discriminatory acts that are not timely objected to by EEOC charge may not form the basis of a lawsuit, they "may constitute relevant background evidence in a proceeding." United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977). Smith complains that he was terminated because of his religion, and this termination was timely objected to in an EEOC charge. The court will consider all other events, whether within the relevant time window or not, as evidence for or against Smith's religious discrimination claim.

2

Printers' Vice President of Sales. Id. ¶ 11. Smith appealed Weiss's decision to Chief Executive Officer David Liess, to no avail. Id. ¶ 13. Smith's last day of employment was November 24, 2014. Id.

Weiss, alleges Smith, had a history of "bias against the Christian faith and those who practice it." Id. ¶ 12. He told Smith, "I know you are a religious person, but that is not working," and noted to Smith that he "ha[d] to watch what [he] sa[id] around you Christians because it will offend you." Id. He also linked Smith's Christianity to incompetence, stating, "I know you are a religious person, but that is not working," and "[t]he reason you guys can't do your jobs is that you are churchgoers." Id. (brackets in original).

Smith filed his EEOC complaint on September 4, 2015, alleging that he was "discriminated against due to [his] religion (Christian), and retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended." See ECF No. 20-16. Though he alleged discriminatory acts running from July 2014 to November 24, 2014, he declined to specify his discriminatory treatment as a "continuing action." Id. Smith now claims, for the first time, that Liess planned to rehire him, only to decline after he learned of Smith's EEOC complaint. ECF No. 26, at 1–2. Smith filed a complaint in the Eastern District of Virginia on June 16, 2016, and the case was transferred by the consent of the parties to this court on September 7, 2016. ECF No. 8.

## II.

Pursuant to Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v.

3

Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., No. 13-2044, 2014 WL 2871492, at *1 (4th Cir. June 25, 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." Anderson, 477 U.S. at 255. However, the non-moving party "must set forth

4

specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). Instead, the non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (citing Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 124 (4th Cir. 1990)).

## III.

"Title VII renders it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion.'" Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 276–77 (4th Cir. 2015) (brackets and first ellipsis in original) (quoting 42 U.S.C. § 2000e-2(a)(1)).

> To establish a claim of disparate treatment based on religious discrimination, an employee must show that based on his religious beliefs, the employer treated him differently. In order to satisfy this burden at the summary judgment stage, a plaintiff must demonstrate that, (1) his job performance was satisfactory and (2) provide direct or indirect evidence that supports a reasonable inference that the adverse employment action was discriminatory.[2]

---

[2] The prima facie case is sometimes articulated as requiring the plaintiff to show: "1) he is a member of a protected class; 2) he was qualified for the job and that his performance satisfied his employer's expectations; 3) he suffered an adverse personnel action despite his qualifications and performance; and 4) the circumstances surrounding the adverse action give rise to an inference of unlawful discrimination." Hassman v. Harvey, No. 1:05CV56(JCC), 2005 WL 3134061, at *5 (E.D. Va. Nov. 23, 2005). Be Printers does not contest that Smith identifies as a Christian, nor that his termination constitutes an adverse personnel action. Thus, for the court's purposes, the two standards do not require different analyses.

5

Westbrook v. N.C. A & T State Univ., 51 F. Supp. 3d 612, 618 (M.D.N.C. 2014) (citations omitted); Huggins v. N.C. Dep't of Admin., No. 5:10-cv-414-FL, 2013 WL 5201033, at *15 (E.D.N.C. Sept. 13, 2013) ("To establish a Title VII claim for religious discrimination, Plaintiff must demonstrate that Defendant treated her differently than other employees because of her religious beliefs.").[3] "Direct evidence of discrimination is either direct evidence of a stated purpose to discriminate, or circumstantial evidence of sufficient probative force to raise a genuine issue of material fact." McIntyre-Handy v. W. Telemarketing Corp., 97 F. Supp. 2d 718, 729 (E.D. Va. 2000); see Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (Direct evidence of discrimination requires "the production of 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995))). "However, because subjective intent and motivation are so difficult to prove, a plaintiff may also use the burden-shifting framework similar to the one articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and develop an inferential case." McIntyre-Handy, 97 F. Supp. 2d at 729–30 (parallel citations omitted).

"To satisfy the McDonnell Douglas test, a plaintiff must [first] put forward sufficient evidence to establish a prima facie case of discrimination or retaliation." Huggins, 2013 WL 5201033, at *15.

---

[3] Smith argues that he does not need to show that his job performance was satisfactory to establish a prima facie case of religious discrimination. In support, he cites Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 (4th Cir. 2002). However, Bryant, a Title VII race-discrimination case, does not support his position. To the contrary, it plainly notes that a prima facie discrimination case requires the plaintiff to show that "he was qualified for his job and his job performance was satisfactory." Id. Therefore the court will consider Smith's job performance in assessing the sufficiency of his prima facie case.

6

> If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Assuming the employer meets this burden of production, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination vel non.[4]

Hill, 354 F.3d at 285 (brackets in original) (quoting Reeves v. Sanderson Pluming Prods, Inc., 530 U.S. 133, 142–43 (2000)).

The Fourth Circuit "ha[s] long observed a strict distinction between claims proceeding with direct evidence of discrimination and those proceeding under the McDonnell Douglas framework." Baker v. City of Chesapeake, 644 F. App'x 222, 223 (4th Cir. 2016) (finding that the plaintiff proceeded only under the McDonnell Douglas framework, and therefore declining to consider arguments as to direct evidence of discrimination "in the absence of exceptional or extraordinary circumstances").

Here, in his brief in opposition to summary judgment, Smith advanced arguments only under the McDonnell Douglas framework, and did not argue that he has presented sufficient direct evidence of religious discrimination to survive summary judgment. See ECF No. 26, at 3–4 (identifying the McDonnell Douglas framework as controlling on the issue of summary judgment). Accordingly, this court will analyze Smith's religious discrimination under the McDonnell Douglas framework only.

---

[4] Indeed, the McDonnell Douglas test should not distract from the fact that the summary judgment inquiry is ultimately concerned with filtering out claims that no reasonable juror could find credible. "The Fourth Circuit has cautioned that courts should not formalistically plough through organizational proof schemes. The various proof schemes should be employed only to filter out clearly meritless claims or to identify early common nondiscriminatory reasons for adverse employment actions." Carter v. Rental Uniform Serv., 977 F. Supp. 753, 757 (W.D. Va. 1997) (citing Blankenship v. Warren Cty. Sheriff's Dep't, 939 F. Supp. 451, 459 (W.D. Va. 1996)).

7

**A.**

The first question is whether Smith has established a prima facie case of retaliation. Though far from uncontroverted, viewed in the light most favorable to Smith, the evidence establishes a prima facie case of religious discrimination.

First, a reasonable jury could find that Smith performed his job responsibilities satisfactorily. Smith's supervisor, Mark Bone, considered Smith a "valuable asset" to Berryville Graphics, opining that he was knowledgeable, honest, and had a good work ethic. ECF No. 26-1, at 14. Moreover, Smith testified that, when he was transferred from Coral Graphics, his supervisor, Sean Twomey, told Smith that he "did not do anything wrong," and "Mark Bone has great respect for you and his team would love to have you back on their side." ECF No. 26-7, at 12.

The evidence as to Smith's employment performance is not entirely one-sided: Michael Borden, Coral Graphics general manager until December 2012, complained that Smith was sometimes difficult to locate, and was often unable to supply pertinent information upon request. ECF No. 26-6, at 6–7. Bone also complained that, despite Smith's efforts, "there were some issues with [his] results." ECF No. 26-1, at 16. However, Bone also acknowledged that many of the problems Smith failed to remedy, such as issues with the Bible printing process, predated his employment at the Berryville facility. Id. at 18.

Likewise, while the hiring of Cullen was clearly concerning to Be Printers' management, Smith has introduced evidence that he was not a principal player in that event. Smith's co-supervisor, Rob Davis, said that he and Clyde White "were the main points of contact" for the position that Cullen filled. ECF No. 26-5, at 6–7. Davis recommended

Cullen for the position, and White interviewed him. Id. Smith claims he was unaware of the family relationship between Davis and Cullen when Cullen was hired, and that he merely "approved the recommendation that Rob Davis had given [him] to bring [Cullen] in through the temp agency." ECF No. 26-7, at 13.

Second, Smith has introduced sufficient indirect evidence that his termination was due to religious discrimination. As described above, Smith claims that Mitchell Weiss "made numerous anti-Christian comments connected with the Berryville employees' performance of their duties." ECF No. 26, at 6. These comments were not only addressed to Smith: Davis recalls confronting Weiss about comments allegedly made to coworker Clyde White, in which Weiss expressed his belief that "church folks" were not effective employees, and were "sensitive." ECF No. 26-5, at 13.[5] A jury could reasonably conclude that Weiss—who "supported" Smith's firing and had the "most influenc[e]" over ultimate decisionmaker and CEO David Liess—was motivated by anti-Christian bias. ECF No. 26-9, at 22, 26.

**B.**

Given that Smith has established a prima facie case of religious discrimination, the burden under the McDonnell Douglas framework shifts to Be Printers to articulate a legitimate reason for Smith's termination. It has done so: as described above, Be Printers complains of Smith's poor job performance, and particularly of his role in the hiring of Adam Cullen. Smith contends that the former justification is not borne out by contemporaneous employment documents associated with Smith's termination. See ECF No. 26, at 10. However, multiple Be Printers employees have, in deposition, attested to

---

[5] Weiss neither admitted nor denied making these statements, stating, "I can't deny [the statements] because I can't remember them." ECF No. 26-9, at 17.

9

Smith's weaknesses as an employee. Moreover, it is uncontroverted that Be Printers, at the time of Smith's firing, attributed its decision to the "hiring and pay rate of Adam Cullen." Id. Be Printers has met its burden, and articulated a legitimate, non-discriminatory reason for its decision to terminate Smith.

## C.

Thus, the final issue is whether Smith has made a sufficient showing that these articulated reasons are pretextual. This is a close question, but, ultimately, the court concludes that Smith has sufficiently demonstrated pretext to survive summary judgment. Smith has pointed out several flaws in Be Printers' proffered reasons. As to his poor performance, Smith provided testimony that tends to indicate that his failures were not so egregious. Sean Twomey allegedly disagreed with the decision to terminate him, and Bone thought of him as a valuable employee, and attributed many of the production issues Smith faced to factors that predated Smith's presence at the Coral Graphics facility.

Turning to Smith's role in the hiring and pay setting of Adam Cullen, Smith has alleged that violations of Be Printers' nepotism policy were common, with "several relatives . . . work[ing] together within [the] facility." ECF No. 26-7, at 20–23. The fact that this particular violation resulted in Smith's termination, while other violations were not responded to, suggests that other motivations played a role. Moreover, Smith has introduced evidence, described supra p. 8, that he had a relatively minor role in Cullen's hiring. He also testified that he was treated differently by Be Printers after Weiss became aware of his Christian faith: "it was like somebody had flipped a switch from that time forward." ECF No. 26-7, at 39. A reasonable jury could view these details in conjunction with Weiss's

Smith's weaknesses as an employee. Moreover, it is uncontroverted that Be Printers, at the time of Smith's firing, attributed its decision to the "hiring and pay rate of Adam Cullen." Id. Be Printers has met its burden, and articulated a legitimate, non-discriminatory reason for its decision to terminate Smith.

## C.

Thus, the final issue is whether Smith has made a sufficient showing that these articulated reasons are pretextual. This is a close question, but, ultimately, the court concludes that Smith has sufficiently demonstrated pretext to survive summary judgment. Smith has pointed out several flaws in Be Printers' proffered reasons. As to his poor performance, Smith provided testimony that tends to indicate that his failures were not so egregious. Sean Twomey allegedly disagreed with the decision to terminate him, and Bone thought of him as a valuable employee, and attributed many of the production issues Smith faced to factors that predated Smith's presence at the Coral Graphics facility.

Turning to Smith's role in the hiring and pay setting of Adam Cullen, Smith has alleged that violations of Be Printers' nepotism policy were common, with "several relatives . . . work[ing] together within [the] facility." ECF No. 26-7, at 20–23. The fact that this particular violation resulted in Smith's termination, while other violations were not responded to, suggests that other motivations played a role. Moreover, Smith has introduced evidence, described supra p. 8, that he had a relatively minor role in Cullen's hiring. He also testified that he was treated differently by Be Printers after Weiss became aware of his Christian faith: "it was like somebody had flipped a switch from that time forward." ECF No. 26-7, at 39. A reasonable jury could view these details in conjunction with Weiss's

alleged statements and conclude that the true reason for Smith's firing was his Christian faith.

Nonetheless, Cullen's hiring indisputably violated Be Printers' nepotism policy, and there is evidence that Smith's supervisors had grievances with his employment performance. The decision not to grant summary judgment does not conclusively determine the motivation underlying Be Printers' employment decisions. Rather, the court is declining to intercede and cut short the process of adjudication, given the conflicting evidence presented by both parties. There are simply genuine issues of material fact that remain, and it is not the court's role, at the summary judgment stage, to substitute its judgment for that of a jury, especially given that the court must credit the evidence Smith has presented, and draw reasonable inferences in his favor. See McAirlaids, Inc., 2014 WL 2871492, at *1. Summary judgment as to Smith's religious discrimination claim is **DENIED**.

## IV.

Title VII disallows employers from "requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). To state a claim for hostile work environment based on religion, the plaintiff must demonstrate that "the harassment was (1) unwelcome, (2) because of religion, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) imputable to the employer." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir. 2008).

"[F]or harassing conduct to qualify as sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment, Plaintiff must show (1) he actually perceived the

11

harassment as 'sufficiently abusive or hostile' and (2) the 'harassment was objectively severe or pervasive.'" Westbrook v. N.C. A & T St. Univ., 51 F. Supp. 3d 612, 621 (M.D.N.C. 2014) (quoting E.E.O.C. v. Cent. Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009)). "This element contains 'both subjective and objective components.'" Id. (quoting Cent. Wholesalers, Inc., 573 F.3d at 175). The objective component considers "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Sunbelt Rentals, Inc., 521 F.3d at 315 (quoting Harris, 510 U.S. at 23). The conduct in question must be so "extreme" as "to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998). "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" Faragher, 524 U.S. at 788 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79 (1998)).

While Smith may have subjectively viewed Weiss's comments as abusive enough to create a hostile work environment, the court cannot agree. Objectively, Smith has failed to provide enough evidence of wrongdoing to establish more than several "mere offensive utterance[s]." The sum total of objectionable conduct detailed in the complaint is as follows:

- Weiss allegedly stated that Smith was "stupid and [his subordinate] supervisors are stupid and they don't know what they are doing." ECF No. 1, ¶ 12 (brackets in original).

- Weiss also "linked that view to their being faithful practicing Christians, saying 'I know you are a religious person, but that is not working.'"

12

- Finally, Weiss allegedly told Smith, "'I have to watch what I say around you Christians because it will offend you,' and '[t]he reason you guys can't do your jobs is that you are church-goers.'"[6] Id.

These comments, while undoubtedly unwelcome to an observant Christian such as Smith, do not rise to the level of creating a hostile work environment. Smith worked at Be Printers for "approximately 25 years," id. at 1, and the "several occasions" in which Weiss purportedly expressed his religious intolerance were simply too infrequent to amount to a pervasive hostile work environment. Likewise, Weiss's comments were not "physically threatening or humiliating," though they were likely offensive to Smith. Finally, Smith also claims that he was "highly rated and considered an essential member of the production team" "until the very end of his employment" at Be Printers. ECF No. 1, ¶ 7. This suggests that Weiss's comments cannot have "unreasonably interfered" with Smith's work performance.

These infirmities in any possible hostile work environment claim are perhaps why Smith does not explicitly bring such a claim in his complaint, see ECF No. 1, and brings no arguments in favor of a hostile work environment claim in his response to Be Printers' motion for summary judgment, see ECF No. 26. Likewise, in his EEOC Charge Letter, Smith did not suggest that he was subject to a hostile work environment, and declined to check the box indicating that the discrimination was a "continuing action."[7] See ECF No.

---

[6] In his brief in opposition to summary judgment, Smith ambiguously refers to "numerous" statements made by Weiss. However, the only additional allegation is that Davis heard Weiss describe Christians as "sensitive." See ECF No. 26, at 6.

[7] "Before a plaintiff may file suit under Title VII . . . he is required to file a charge of discrimination with the EEOC." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (citing 42 U.S.C. § 2000e-5(f)(1)). The charge must be "sufficiently precise to identify the parties, and to describe generally the actions or practices complained of." Chacko v.

13

20-16.

In sum, Smith's hostile work environment claim is not tenable, and Smith expends very little energy in support of it. The handful of Weiss' comments of which Smith complains may be sufficient to indicate to a reasonable jury that Smith was terminated due to impermissible religious bias; however, these same comments fall far short of amounting to the type of "extreme" conduct necessary to maintain a hostile work environment claim. Summary judgment as to Smith's hostile work environment claim is **GRANTED**.

**V.**

Finally, the court turns to Smith's claim of retaliation. "The elements of a prima facie claim for retaliation are: '(1) engagement in a protected activity; (2) [materially[8]] adverse . . . action; and (3) a causal link between the protected activity and the employment action.'" Ingleson v. Burlington Med. Supplies, Inc., 141 F. Supp. 3d 579, 583 (E.D. Va. 2015) (quoting Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)). "To establish a causal connection between a protected activity and an adverse action, a plaintiff must prove that . . . the employer knew the employee engaged in a protected activity." Saah v.

---

Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (internal quotation marks omitted) (quoting 29 C.F.R. § 1601.12(b)). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).

"[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). Thus, if the court concluded that Smith's hostile work environment claim was insufficiently tied to his EEOC charge letter, "the only function left to the court [would be] that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998). This is not the case; Smith's hostile work environment claim is "reasonably related" to his EEOC Charge allegations. The EEOC Charge complains of "the same time frame[], actor[], and discriminatory conduct," Bott v. U.S. Airways, Inc., No. 3:09-cv-113-FDW, 2009 WL 1686801, at *2 (W.D.N.C. June 15, 2009), as the hostile work environment claim. Moreover, because "lawyers do not typically complete the administrative charges," courts must construe them liberally. Chacko, 429 F.3d at 509. Therefore, the court does not lack subject matter jurisdiction over this claim, and will render judgment on the merits.

[8] In Hinton v Va. Union Univ., 185 F. Supp. 3d 807, 825–831 (4th Cir. 2016), the Court of Appeals for the Fourth Circuit makes clear that a "'materially adverse action,' not 'adverse employment action,' is the proper articulation of the adversity element in retaliation claims."

14

Thumel, No. RDB-15-2425, 2017 WL 491221, at *12 (D. Md. Feb. 7, 2017) (internal quotation marks omitted) (brackets in original) (quoting Gibson v. Marjack Co., 718 F. Supp. 2d 649, 655 (D. Md. 2010)).

Smith's current ability to press a retaliation claim suffers from a fundamental flaw: his complaint discloses no claim for retaliation. He alleges that he was terminated because of his Christianity, not because of any activity protected by Title VII.[9] There are simply no allegations in the complaint that suggest that Smith was subjected to adverse employment action based on his protected activity.

In his brief in opposition to the motion for summary judgment Smith alleges, for the first time, that, "[n]ot long after [his] termination, Liess planned to re-hire Smith, but upon learning Smith was pursuing a complaint of religious discrimination against the company, decided not to re-hire him for this reason." ECF No. 26, at 1–2. Smith otherwise does not address any potential retaliation claim. Counsel for Smith enlarged on this allegation at the June 28, 2017 hearing on the motion for summary judgment. He argued that the deposition of David Liess revealed that Be Printers would have rehired Smith, and only chose not to do so when it found out that Smith was pursuing a discrimination lawsuit against the company. This, counsel argued, was the basis for Smith's retaliation claim.

This claim could have merit. The initiation of an antidiscrimination lawsuit is protected activity under Title VII. See 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful

---

[9] Smith does allege that he protested that the reasons for his termination were "bogus." ECF No. 1, ¶ 10. However, that comment came after he had been informed of the decision to terminate, and thus cannot be the basis for the termination. Even if Smith's comment had preceded his termination, "generalized complaints which do not alert the employer or person receiving the complaint 'that [the employee's] complaints were based on an allegation of discrimination,' are not protected activity." Sara Kaye Ruffner v. MD OMG EMP LLC, No. WDQ-11-1880, 2012 WL 3542019, at *3 (D. Md. Aug. 13, 2012) (quoting Sajadian v. Am. Red Cross, 202 F.3d 260 (4th Cir. Dec. 7, 1999) (unreported table decision)).

15

employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, *proceeding*, or hearing under this subchapter." (emphasis added)); Riley v. Del. River & Bay Auth., 661 F. Supp. 2d 456, 470 (D. Del. 2009); see also Young v. West, 149 F.3d 1172, at *7 (4th Cir. 1998) (unreported table decision) (holding that filing an EEOC Charge is protected activity). Likewise, failure to rehire qualifies as a materially adverse employment action. See, e.g., Johnson v. Food Lion, LLC, No. 1:02CV00904, 2003 WL 22741156, at *2 (M.D.N.C. Nov. 17, 2003) ("[I]t is apparent that an adverse employment action is alleged on the basis of Defendant's failure to rehire, because § 2000e–3(a) prohibits discrimination against both existing employees and "applicants for employment" on the basis of protected activity."). And, Liess's deposition could be found by a jury to establish a link between the decision not to re-hire Smith and the lawsuit. Liess admitted that he was initially in favor of Smith's rehiring, ECF No. 26-14, at 8, and, when asked why he changed his mind, recalled that "this was somewhere close to the time frame that we received notification that we were getting sued by Jim Smith," id. at 9. Liess found that notification to be "kind of unnerving," id. at 12, and concluded, "I guess we probably can't even hire the guy,"[10] id. at 13.

However, there is no claim for retaliation before the court. Smith's complaint contains none of these allegations. Rule 8(a)(2) of the Federal Rules of Civil Procedure

---

[10] Liess subsequently reinforced the idea that the lawsuit was the reason for his decision not to re-hire Smith:

> I was scared. I was concerned. I wasn't sure, do you bring somebody back, you just received word you are being sued. Is it—is there an ethical standard that I follow? I have no idea, so I just decided to steer clear of it . . . [a]nd not hire him back.

Id. at 14.

requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." There is no statement of this claim in Smith's complaint, short and plain or otherwise. Nor has Smith moved to amend his complaint.

If Smith were to amend his complaint to assert this retaliation claim, procedural rules would likely prove no bar. "[T]he Fourth Circuit explicitly has held that retaliation is reasonably related to a previous charge of discrimination," and thus a plaintiff need not file a subsequent EEOC charge when alleging retaliation based on the initial complaint. Carter, 977 F. Supp. at 758 (citing Nealon v. Stone, 958 F. 2d 584, 590 (4th Cir. 1992)); see Jones v. Calvert Group, Ltd., 551 F.3d 297, 301–304 (4th Cir. 2009). Moreover, the 300-day limitations period (after which complaints based on EEOC charges may not be filed), see Nat. R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 106 (2002), is also potentially surmountable: the amended complaint may relate back to the original complaint, in that it potentially "ar[ises] out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).[11]

Smith's retaliation claim, as it currently stands, is untenable, and summary judgment is hereby **GRANTED**. However, pursuant to Rule 15(a)(2)'s instruction that "[t]he court should freely give leave [to amend] when justice so requires," the court will grant leave to Smith to amend his complaint to assert a cause of action for retaliation based on Be Printers' failure to rehire him following his termination from the company, should he so choose.

---

[11] These procedural requirements are not certain to pose no difficulty; the court cannot pre-judge the merits of a cause of action that is as-yet unpled, and much will depend on the specific allegations Smith brings, if he chooses to amend his complaint.

## VI.

For the foregoing reasons, Be Printers' motion for summary judgment (ECF No. 20) is **GRANTED in part** and **DENIED in part**. Summary judgment is granted as to Smith's hostile work environment and retaliation claims, and denied as to his claim for religious discrimination. Smith is also given leave to amend his complaint to assert a retaliation claim, if he so chooses. He is directed to file an amended complaint, if at all, within **fourteen (14) days** of entry of this memorandum opinion.

An appropriate Order will be entered.

Entered: 08-29-2017

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge